UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANGELA MICHELLE GILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | 2:13-cv-1785-AKK |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

Plaintiff Angela Gill ("Gill") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I. Procedural History

Gill filed her application for Title II Disability Insurance Benefits on August 23, 2009, (R. 152), alleging a disability onset date of August 28, 2009, (R. 118), due to a torn disk, herniated disc, sciatica, and diabetes, (R. 164). After the SSA

1

denied her application on June 13, 2010, (R. 105), Gill requested a hearing, (R. 113). At the time of the hearing on November 10, 2011, Gill was 34 years old, (R. 26, 70, 72), with a high school education, three years of college, and had past work experience as an insurance clerk, claims aide, administrative assistant, cashier, and cake decorator, (R. 96-97, 145). Gill worked after August 28, 2009, her alleged onset of disability, but has not engaged in substantial gainful activity since that date. (R. 16).

The ALJ denied Gill's claim on May 4, 2012, (R. 11–27), which became the final decision of the Commissioner when the Appeals Council refused to grant review on July 27, 2013, (R. 5-7). Gill then filed this action pursuant to § 205(g) of the Act, 42 U.S.C. § 205(g), on September 26, 2013. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological,

or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of

pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Gill had not engaged in substantial gainful activity since her application date and therefore met Step One. (R. 16). Next, the ALJ acknowledged that Gill's severe impairments of a history of degenerative disc disease of the lumbar spine, obesity with a height of 5 feet, 7 inches and a weight of 244 pounds, and depressive disorder met Step Two. (R. 16). The ALJ then proceeded to the next step and found that Gill did not satisfy Step Three since she "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 19) (internal citations omitted). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he

6

proceeded to Step Four, where he determined that Gill has the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except she must avoid [exposure] to extreme cold, heat, humidity, and vibration; she cannot work from unprotected heights or with hazardous machinery; she can only do occasional stooping, kneeling, crouching, and crawling; she can only occasionally to frequently (but not constantly) climb[] stairs and ramps; she is unable to climb ladders, ropes, or scaffolds; she can understand, remember, and carry out instructions sufficient to complete semiskilled tasks; she can maintain concentration, persistence, and pace for periods of up to two hours sufficient to complete a regular eight hour workday with routine breaks; and she is limited to a low stress job which is defined as occasional changes in the work setting and no production rate pace work, but rather goal oriented work with no production quotas.

(R. 21). In light of Gill's RFC, the ALJ determined that Gill "[was] capable of performing past relevant work as a file clerk, insurance clerk, claims aide, and administrative assistant." (R. 25). Alternatively, the ALJ turned to Step Five, considering Gill's age, education, work experience, and RFC, and determined, based on the Medical Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, section 201.28 and on the testimony of a vocational expert ("VE"), that Gill "is capable of performing other jobs existing in significant numbers in the national economy, even without consideration of her transferable skills." (R. 26). Because the ALJ answered Step Four and, alternatively, Step Five in the negative, he determined that Gill was not disabled. (R. 27)

V. Analysis

The court now turns to Gill's contentions that (1) the ALJ afforded inappropriate weight to the opinions of a non-treating physician over the opinions of Gill's treating physician, (2) the ALJ improperly determined Gill's RFC, and (3) the ALJ improperly discredited the subjective testimony of Gill with respect to her pain and limitations. Doc. 10 at 7-8. For the reasons stated below, the court finds that the ALJ applied the correct legal standards and his opinion is supported by substantial evidence.

    A.    <u>The ALJ afforded proper weight to the opinions of both treating and non-treating physicians.</u>

Gill first contends that the ALJ afforded improper weight to the opinion of Gill's primary care physician. *See* doc. 10 at 8-9. Dr. Bryan McClelland, who treated Gill on a regular basis and attended her through multiple hospitalizations, (R. 232-233, 254-255-314-315), completed a disability form, accompanied by a note, in which he opined that Gill was permanently and totally disabled, (R. 189-90). Also, pursuant to the ALJ's request to supplement the record, (R. 102, 317), Dr. McClelland completed a Physical Capacity Evaluation form, in which he again stated that Gill was incapable of walking or standing, but could occasionally lift up to 20 pounds and occasionally use her arms for pushing, pulling, simple grasping, and fine manipulation. (R. 318-319). Dr. McClelland cited "severe back pain . . ."

as a basis for his opinion. (R. 318). The ALJ, however, afforded no weight to Dr. McClelland's opinion regarding Gill's physical capacity and disability because they "lacked both consistency and supportability from the greater weight of evidence." (R. 25).

Although the opinion of a treating physician is generally entitled to considerable evidentiary weight, *see, e.g. Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), an ALJ can reject a treating physician's opinion where it is not supported by the evidence, the evidence supports a contrary finding, or where the opinion is conclusory or inconsistent with the doctor's own medical records, *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* at 1241. Good cause exists to discount the opinion of a treating physician when the record reveals inconsistencies between the doctor's disability assessment and his treating records. *Crow v. Commissioner, Social Sec. Admin.*, 571 Fed. App'x. 802, 806-07 (11th Cir. July 7, 2014).

Based on the court's review of the record, good cause existed for the ALJ to reject Dr. McClelland's opinions. Although, as Gill aptly puts it, "the record reflects an extensive longitudinal history of treatment by Dr. McClelland over a considerable period of time . . . ," doc. 10 at 12, however, as the ALJ pointed out, the longitudinal history of Dr. McClelland's actual treatment paints a different

picture than his conclusory opinions about Gill's physical capacity and disability. (R. 23). For instance, although Dr. McClelland attributes Gill's alleged limitations to severe pain, the ALJ noted that Dr. McClelland treated Gill conservatively with prescription medication, did not report that Gill had disabling pain or limitations in 2009 when Gill had her last exacerbation, and there is no indication in Dr. McClelland's records that Gill's condition worsened between 2009 and 2010 - 2011, the years when Dr. McClelland opined that Gill was permanently disabled. (R. 23). Instead, the record shows that, despite a central disc protrusion of L5-S1 abutting the dural sac and some mild bulging at L4-5 in 2009, there was no significant root compression and no deficits. (R. 232). Moreover, Dr. Sean O'Malley, the specialist who diagnosed Gill's central disc protrusion, recommended conservative measures instead of surgery, (R. 314), and Dr. McClelland continued to treat Gill's pain with prescription pain medication, (R. 84, 196, 199, 205). The conservative approach proved sufficient because later, when Dr. Bruce Pava performed a consultative examination of Gill in December of 2010, he noted that Gill reported a history of good health with no constitutional complaints or problems. (R. 629). Dr. Pava observed that, although Gill was overweight, Gill had unlabored respiration, regular heart sounds, strong pulses, intact sensation, 2+ reflexes, no edema, a normal gait and could walk on heels and toes and rise from a deep squatting position without difficulty, and full active range

of motion in all joints and the spine. (R.269-270). Based on his examination, Dr. Pava found no medical contraindication to work requiring mild exertion. (R. 270).

Relying on the medical record as a whole, the ALJ properly discounted Dr. McClelland's claim that Gill was permanently disabled and incapable of walking, standing, bending, squatting, or crawling. As the ALJ pointed out, Dr. McClelland's conservative treatment belies his opinion that Gill is permanently disabled. Therefore, good cause existed for the ALJ to reject Dr. McClelland's opinion.

      B.    <u>The ALJ properly determined Gill's residual functional capacity.</u>

Next, Gill contends that the ALJ posed a hypothetical question to the VE that represented a "fatally flawed" RFC determination because it failed to include Gill's back pain with sciatica, depression, headaches, or obesity. Doc. 10 at 13-14. Unfortunately for Gill, the functional limitations imposed by a condition, rather than the diagnosis alone, determines disability. *See Russell v. Astrue*, 331 Fed. App'x 678, 681(11th Cir. 2009) ("an abnormality that does not cause an impairment will not support a finding of disability."); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work."). Gill's contention is flawed because of her failure to identify any credible functional limitations

11

associated with the diagnoses she contends the ALJ failed to include in his RFC determination. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("the mere existence of these impairments does not reveal the extent to which they limit her ability to work . . . ."). The failure to do so is detrimental because "the claimant bears the burden of proving that a given impairment causes her to be disabled." *Russell*, 331 Fed. App'x at 681 (citing *Carnes v. Sullivan*, 936 F.2d 115, 1218 (11th Cir. 1991)).

Significantly, however, the ALJ had good cause for not including the conditions at issue in the hypothetical posed to the VE. First, although the ALJ considered Gill's testimony that she experienced debilitating headaches once a week, (R. 22, 80), he determined that the treatment records did not corroborate this testimony, (R. 23). To support his determination, the ALJ noted that Gill never complained to Dr. McClelland that she had weekly headaches and that the record shows only that (1) in 2009 Gill complained of diarrhea and headache at one appointment and lower back pain with headache and vomiting at another, (R. 195, 204), and (2) that Gill complained of a severe post myelogram headache on another occasion, but that it was successfully treated with a blood patch procedure, (R. 23, 284-285). The ALJ added that the record contained no evidence of limitations associated with these three headaches. Based on this lack of evidence, the ALJ reasonably concluded that they were not severe. (R. 19).

Next, with respect to Gill's obesity, (R. 24), the ALJ found that Gill failed to allege specific functional limitations due to her condition and, therefore, concluded that Gill's obesity "does not significantly interfere with her ability to perform physical activities or routine movement consistent with the exertional requirements of the above-stated [RFC]". *Id*. This finding is reasonable because "when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." Social Security Ruling 96-8p, 1996 WL 374184, at *3 (S.S.A.)

Finally, contrary to Gill's contention, the ALJ accepted the opinions of Dr. Holly Deemer, a psychologist who examined Gill in 2012, related to Gill's back pain and depression. (R. 24, 321-323). According to Dr. Deemer, Gill had cognitive difficulties associated with her back pain, would have mild difficulties with simple tasks and moderate difficulties with complex instructions, might become overwhelmed by stress or criticism, and appeared capable of responding appropriately to supervision, co-workers, and work pressures. (R. 323). Based on Dr. Deemer's opinion that Gill's prognosis was dependent on her physical pain level, the ALJ noted in his findings that Gill testified at the hearing that "her pain was a 3 to 5/10 about an hour after she took pain medication, or no more than mild

13

to moderate pain," (R. 23), and that Celexa "apparently well controls [Gill's] depression" and that she had not been referred for mental health treatment. (R. 24). More importantly, the ALJ properly accounted for Gill's symptoms by limiting her to semiskilled tasks, routine breaks, a low stress job, and no production quotas. (R. 21). In other words, while the ALJ may not have included Gill's mild to moderate pain and depression in the hypothetical to the VE, the ALJ actually accounted for those conditions in the RFC. Therefore, no credible basis exists to reverse the ALJ's decision.

    C.    <u>The ALJ properly discredited the subjective testimony of Gill respect to her pain and limitations.</u>

Gill's final contention is that the ALJ failed to adequately consider her subjective testimony regarding physical pain. Doc. 10 at 17-23. This contention is unavailing because the Act and its attendant regulations provide that subjective statements regarding pain alone are insufficient to establish disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. Rather, in addition to the claimant's testimony, medical signs and laboratory findings must exist to show an impairment that could reasonably be expected to produce the alleged symptoms. *Id.*; *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In that respect, when the underlying medical evidence indicates the existence of an impairment, the ALJ must evaluate the credibility of the claimant's testimony as to pain and must express a reasonable basis for discounting that testimony. *Hand v. Heckler*, 761

F.2d 1545, 1549 n.6 (11th Cir. 1985), *reinstated by Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986); 20 C.F.R. § 416.929(c). An ALJ may discount a claimant's pain testimony if there is evidence in the record that, despite the alleged pain, the claimant is capable of performing certain daily activities that undermine her pain testimony, or if the medical record indicates a conservative course of treatment. *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 2996). Likewise, an ALJ may find a claimant's pain testimony not credible where discrepancies exist between the objective clinical findings and claimant's testimony. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).

The ALJ considered Gill's subjective complaints and appropriately determined that her statements concerning pain and its impact on her ability to work were not credible. To support his finding, the ALJ relied first on Gill's physicians' conservative treatment history, (R. 23), pointing out that (1) the record indicates that Dr. O'Malley recommended only conservative treatment measures and suggested surgery only if Gill was unable to "obtain any relief and has in fact unbearable pain . . . ," (R. 315), and (2) that Dr. McClelland, Gill's treating physician, followed a conservative regimen that consisted of pain medication that, according to Gill, reduced the pain in the course of approximately one hour, (R. 84, 196, 199, 205), and a lumbar epidural block during an episode in 2009, which, according to Dr. McClelland, resulted in "good pain control." (R. 222). Second, the

15

ALJ noted that Gill has had the same back problems since the late 1990's, (R.118), with periodic exacerbations (R.84), and yet worked throughout and until 2010 (R. 76). The ALJ concluded that the absence of any evidence of deterioration undermines Gill's subjective pain testimony. (R. 22). Third, the ALJ pointed to Dr. Pava's report and found that Gill's stated history of good health without constitutional complaints or problems, her normal gait, ability to walk on toes and heels and to rise from a deep squatting position without difficulty, and the full active motion of all joints, extremities, and spine, contradicted Gill's testimony regarding debilitating pain. (R. 270 – 271).

Finally, the ALJ found that Gill's daily activities undermined her allegations of subjective pain. (R. 24). Gill's reported activities indicated that she walks her dogs twice a day, (R. 154), cooks one to three times a week with her daughter, does laundry and cleans with assistance, dusts and "pick[s] up from tables and counters," (R. 155), drives a car and shops for groceries, pays bills, counts change, (R. 156), and coaches softball from the bench for two months in the spring, (R. 157). Gill correctly notes that "the ability to watch television, do occasional shopping, or perform other sporadic activities does not indicate the ability to perform in a work setting," doc. 10 at 20 (citing *Holman v. Barnhart*, 313 F. Supp. 2d 1315, 1327 (N.D. Ala. 2007)), and that "[a] claimant need not 'vegetate in a dark room' or 'be a total basket case' to be found unable to engage in substantial

gainful activity." *Id.* at 21 (citing *Smith v. Califano*, 637 F.2d 968, 971-72 (8th Cir. 1989)). However, when, as here, substantial evidence of daily activity directly contradicts a claimant's pain testimony, that evidence may be cited by an ALJ as diminishing the claimant's credibility. *See Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986). Based on the court's review of the record, the court finds that the record supports the ALJ's finding that the nature and variety of Gill's activities were inconsistent with her allegation of severe pain and debilitating limitations. (R. 24).

Consistent with the law, the ALJ provided reasons in support of his decision to reject Gill's subjective complaints of pain. Specifically, the ALJ cited Gill's daily activities, the lack of medical evidence, and Gill's conservative treatment history. Because substantial evidence supports the ALJ's decision, no reversible error exists.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Gill is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 25th Day of November, 2014.

                                       _____
                                             **ABDUL K. KALLON**
                                   UNITED STATES DISTRICT JUDGE